IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Harry L. Tyson, )
 )
 Plaintiff, ) Case No. 1:02-CV-907
 )
 vs. )
 )
University of Cincinnati, )
et al., )
 )
 Defendants. )

O R D E R

This matter is before the Court on Defendants' motion for summary judgment (Doc. No. 24). For the reasons that follow, Defendants' motion for summary judgment is well-taken and is **GRANTED.**

I. Background

Plaintiff Harry L. Tyson, an African-American male, contends that Defendants University of Cincinnati, Patricia Krekeler, Michael Calhoun, Mark Young, and Gary Hammond discriminated against him on the basis of race and discharged him from his position as a computer systems analyst in retaliation for filing complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"). Plaintiff asserts his claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et

seq., and 42 U.S.C. § 1981.[1]  The record, however, does not support any of Plaintiff's contentions.

In April 1999, upon the recommendation of Defendant Mark Young, the University of Cincinnati hired Plaintiff as a computer systems analyst in its Information Technology Department.  The record demonstrates that Plaintiff consistently performed at the low end of the evaluation scale.  Plaintiff's strongest evaluation was his first one, which covered the period July 1, 1999 to June 30, 2000.  On a scale of 1 to 5, Plaintiff received two 3's (consistently meets job requirements) and three 2's (meets most job requirements but requires attention).  Plaintiff's overall performance, however, was rated as 2.

In July 2000, Plaintiff applied for a position as a senior analyst.  A selection committee reviewed the applications and conducted interviews of the applicants.  The committee gave Defendant Young a choice of two candidates to promote, Jocelyn Tchakounte, an African-American male, and Anna Dill.  Young's first choice was Tchakounte, who declined the offer.  Young then offered the position to Dill, who accepted.  Young Aff. ¶¶ 11-13.

---

[1] Plaintiff filed two essentially similar lawsuits, this case, and Tyson v. University of Cincinnati, C-1-03-158.  The only discernible difference between the two lawsuits is that the latter case added Gary Hammond as a Defendant.  The two cases were consolidated on July 30, 2003 by order of Judge Spiegel.  Each case originally included state law claims for wrongful discharge in violation of public policy, intentional infliction of emotional distress, and retaliation.  Plaintiff, however, voluntarily dismissed these claims in each case.

Plaintiff's next performance evaluation, for the period July 1, 2000 to June 30, 2001, showed a decline. Plaintiff received 2's in every category. Additionally, on May 11, 2001, Defendants Young and Hammond officially reprimanded Plaintiff in a memorandum for insubordination, lack of professionalism, lack of quality, and failing to complete assignments in a timely manner. Following this evaluation, Plaintiff's supervisors issued him a formal performance improvement plan ("PIP") to correct the deficiencies noted in his evaluation.

In June 2001, the University adopted a new classification system for employees occupying technology positions called Broadbanding. Technology employees were reclassified in one of three levels, CL1, CL2, or CL3.[2] CL1 was the lowest classification and CL3 was the highest classification, with most employees being classified as CL2. Young reclassified Plaintiff and two other white employees, Arlene Hawes and Larry Woodside, as CL1's. Heart Aff. ¶¶ 3-10. Plaintiff appealed his reclassification to CL1, but Defendant Calhoun denied the appeal on September 19, 2001.

In October 2001, Plaintiff filed a complaint with the EEOC alleging that the University of Cincinnati discriminated against him by paying him less than white peers in the same job classification. The EEOC issued Plaintiff a right-to-sue letter on this claim in September 2002.

---

[2] CL is an acronym for "competency level."

In November 2001, Plaintiff filed a complaint of racial discrimination with the OCRC regarding his unfavorable performance evaluation and his reclassification to CL1. Plaintiff filed the same charge with the EEOC. The OCRC issued Plaintiff a right to sue letter on this claim in October 2002. The EEOC followed suit in December 2002.

In April 2002, Defendant Krekeler issued Plaintiff a memorandum which notified him that he was not meeting the goals outlined in his PIP. Krekeler further advised Plaintiff that his position was in jeopardy, that he would be re-evaluated in three months, and that failure to meet performance expectations would result in his termination. On June 12, 2002, Krekeler completed an performance evaluation on Plaintiff for the prior year in which she rated his overall performance as 2. On July 31, 2002, Krekeler officially terminated Plaintiff's employment for continued unacceptable performance.

In October 2002, Plaintiff filed a complaint with EEOC alleging that the University of Cincinnati terminated his employment in retaliation for filing his earlier complaints of discrimination. The EEOC issued Plaintiff a right to sue letter on this complaint in January 2003.

As indicated above, Plaintiff has pending claims of race discrimination and retaliation against the University of Cincinnati and Defendants Krekeler, Calhoun, Young, and Hammond pursuant to Title VII of the Civil Rights Act of 1964 and 42

U.S.C. § 1981. Defendants now move for summary judgment on each of the remaining claims.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial

unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a

6

directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based

7

solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

Initially, the Court notes that claims of racial discrimination in employment under 42 U.S.C. § 1981 are subject to the same evidentiary standards as employment discrimination claims under Title VII. Noble v. Brinker Int'l, Inc., 391 F.3d 715, 720 (6th Cir. 2005). However, as Defendants correctly observe, Eleventh Amendment sovereign immunity bars Plaintiff's § 1981 claims against the University of Cincinnati. Foulks v. Ohio Dept. of Rehab. & Corr., 713 F.2d 1229, 1233-34 (6th Cir. 1983). The Eleventh Amendment does not, however, bar § 1981 claims against the individual defendants in their individual capacities. Id. at 1234. The individual defendants are not, however, subject to individual liability on Plaintiff's Title VII claims. Wathen v. General Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997). Thus, what remains after this procedural detour are claims of racial discrimination and retaliation against the University of Cincinnati pursuant to Title VII and claims of racial discrimination and retaliation against the individual defendants pursuant to 42 U.S.C. § 1981,[3] all of which are subject to Title VII evidentiary standards and may be analyzed together. Noble, 391 F.3d at 720; Peters v. Lincoln Electric Co., 285 F.3d 456, 469 (6th Cir. 2002).

---

[3] Retaliation claims are also cognizable under § 1981. Harvis v. Roadway Exp., Inc., 973 F.2d 490, 494 (6th Cir. 1992).

A plaintiff may establish a prima facie case of discrimination through either direct evidence or circumstantial evidence. <u>Manzer v. Diamond Shamrock Chem. Co.</u>, 29 F.3d 1078, 1081 (6th Cir. 1994). If the plaintiff presents direct evidence that the employer discriminated against him on the basis of a protected characteristic, the burden of persuasion shifts to the employer who then must show that it would have taken the same action even without the discriminatory motivation. <u>Id.</u>

In the absence of direct evidence of discrimination, the plaintiff may establish a prima facie case of discrimination through the familiar <u>McDonnell Douglas</u> burden shifting framework. <u>Id.</u> Under this method, the plaintiff establishes a prima facie case of discrimination by showing: 1) he is a member of a protected class; 2) he suffered adverse employment action; 3) he was qualified for the job lost or not gained; and 4) that a person not within the protected class replaced or was selected over him. <u>Id.</u> A plaintiff may also satisfy the last part of the <u>McDonnell Douglas</u> test by showing that the defendant treated similarly-situated, non-protected persons more favorably than the plaintiff. <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1246 (6th Cir. 1995). Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to proffer legitimate non-discriminatory reasons for its actions. <u>Manzer</u>, 29 F.3d at 1802. "[F]or a reason to be 'legitimate,' in the sense of sufficient to rebut a prima facie case, it need not be a good or sympathetic

9

justification for what the employer did; it need only be nondiscriminatory and . . . explain why the challenged action was taken." Timm v. Mead Corp., 32 F.3d 273, 275 (7th Cir. 1994). If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant for its actions are but a pretext for discrimination. Id. However, the burden of persuasion remains with the plaintiff at all times. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

The plaintiff may prove pretext in three ways: 1) by showing that the defendant's reasons had no basis in fact; 2) by showing that the proffered reasons did not actually motivate the defendant; or, 3) by showing that the proffered reasons were not sufficient for the defendant to act as it did. Kline v. Tennessee Valley Authority, 128 F.3d 337, 346 (6th Cir. 1997). When the plaintiff proves pretext by the first or third methods, the fact finder may infer discrimination and the plaintiff need not produce any additional evidence of discrimination. Id. In the second situation, the factual basis for the defendant's actions is not challenged; therefore, the plaintiff must adduce additional evidence of discrimination in order to prevail. Id. at 346-47.

There is no direct evidence, such as discriminatory comments, that race played any part in the adverse employment actions taken against Plaintiff. Moreover, assuming that

Plaintiff can establish a prima facie case of racial discrimination pursuant to McDonnell Douglas, there is no circumstantial evidence from which a reasonable juror could conclude that any adverse employment actions were taken against Plaintiff because of his race.

As the Court indicated above, Plaintiff's performance was problematic almost from the outset of his employment with the University.  By the time Plaintiff applied for a promotion to senior analyst in June 2000, his performance was already regarded as substandard.  Additionally, as Defendants point out, Young's first choice for the promotion to senior analyst, Jocelyn Tchakounte, was also an African-American, dispelling any inference that Plaintiff's race played any part in the decision not to promote him.

Similarly no evidence supports a conclusion that Plaintiff was reclassified to CL1 because of his race.  Again, Plaintiff's performance was consistently ranked at the low end of the evaluation scale.  In addition, in May 2001, Plaintiff had been issued a performance improvement plan which documented several areas where his work was deficient.  Plaintiff's reclassification to CL1, the lowest competency level, corresponds with his documented substandard performance.  Moreover, as Defendants also highlight, two white employees in Plaintiff's department were reclassified to CL1 at the same time.  This evidence also dispels any inference that Plaintiff's reclassification was because of his race.

The record does not support any inference that Plaintiff's employment was terminated in retaliation for his earlier complaints of discrimination.  In order to establish a prima facie case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by the discrimination statutes; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  See Harrison v. Metropolitan Gov't, 80 F.3d 1107, 1118 (6th Cir. 1996).  To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not participated in protected activity.  See EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997); Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 377 (6th Cir. 1984).  Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation.  See Moon v. Transport Drivers, Inc., 836 F.2d 226, 230 (6th Cir. 1987).

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to proffer a legitimate, non-retaliatory reason for the adverse employment

action.  Manzer, 29 F.3d at 1082.  If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are but a pretext for retaliation.  Id.  However, the burden of persuasion remains with the plaintiff at all times.  Hicks, 509 U.S. at 511.

In this case, there is no evidence of a causal connection between Plaintiff's complaints and his termination, and, even if there were, no evidence rebuts Defendants' assertion that Plaintiff's performance was the basis for his termination.  Plaintiff filed complaints of discrimination in October and November 2001 and was terminated in July 2002.  In the absence of any other evidence of a retaliatory motive, the approximate nine month lag between the last protected activity and Plaintiff's termination dispels any inference of a causal connection for lack of temporal proximity.  Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir. 1999) (absent additional evidence, two to five months insufficient to create a triable issue of causation).  Plaintiff has not directed the Court to evidence other than mere temporal proximity in support of a  causal connection, and indeed this potential theory fails upon the facts.

In any event, nothing in the record cast doubt on Defendants' assertion that Plaintiff's performance was the reason for his termination.  Again the Court observes that Plaintiff's performance was consistently poor from the inception of his employment.  He was placed on another PIP in April 2002 and warned that he would be terminated in three months if his

13

performance did not improve.  Thus, Defendants' decision to terminate Plaintiff in July 2002 is consistent with Plaintiff's longstanding inadequate performance and his failure, or inability, to register any improvement.  No reasonable juror could conclude that retaliatory animus motivated Plaintiff's discharge.

<u>Conclusion</u>

In conclusion, the record does not support any reasonable inference that any of the Defendants discriminated against Plaintiff because of his race or retaliated against him for filing complaints of discrimination by terminating his employment.  Accordingly, Defendants' motion for summary judgment is well-taken and is **GRANTED** in all respects.  Plaintiff's claims are **DISMISSED WITH PREJUDICE.  THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date May 5, 2005                             s/Sandra S. Beckwith
                                    Sandra S. Beckwith, Chief Judge
                                       United States District Court